**CITY OF CENTRALIA, WASHINGTON, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Washington State Department of Game; Nisqually Indian Tribe; City of Tacoma, Respondent–Intervenors.**

No. 87–7212.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 3, 1987.

Decided July 6, 1988.

Frank W. Frisk, Jr., Washington, D.C., for petitioner.

Joshua Z. Rokach, F.E.R.C., Washington, D.C., for respondent.

Susan Komori Hvalsoe and Kevin R. Lyon, Cullen & Hvalsoe, Nisqually Indian Tribe, William C. Frymire, Asst. Atty. Gen., Washington Fisheries and Wildlife, Olympia, Wash., for respondent-intervenors.

Petition to Review an Order of the Federal Energy Regulatory Commission.

Before WALLACE[*] and FLETCHER, Circuit Judges, and CARROLL,[**] District Judge.

PER CURIAM:

The issue here is whether the Nisqually River is navigable within the meaning of the Federal Power Act, thereby conferring Federal Energy Regulatory Commission jurisdiction over the City of Centralia's Yelm hydroelectric power plant project.

## OVERVIEW

The City of Centralia ("City") appeals from an order of the Federal Energy Regulatory Commission ("Commission") declaring the Nisqually River in Washington State to be a navigable river within the meaning of the Federal Power Act, 16 U.S. C. § 791a *et seq.* Because the Commission has jurisdiction over rivers found to be navigable, it ordered the City to license its Yelm hydroelectric project. The City petitions for review of the Commission's order, arguing that the finding of jurisdiction was erroneous.

## FACTS AND PROCEEDINGS BELOW

Since 1930, the City has operated the Yelm Project, a hydroelectric plant on the Nisqually River. The Nisqually River is a glacier-fed stream that originates on Mount Rainier and empties into Puget Sound. The Yelm Project consists of a diversion dam at rivermile 26.2 and a powerhouse at river-mile 12.7.[1] From the powerhouse, the water reenters the river channel.

This controversy originally arose in 1974 when the Nisqually Indian Tribe filed a complaint alleging that hydroelectric projects on the Nisqually River were adversely affecting the river's anadromous fish population. The City was joined as a necessary party. The original hearing on licensing jurisdiction was decided on stipu-

lated facts in lieu of an evidentiary hearing, with the issue limited to the sole question of whether the Yelm Project affected interstate commerce. The Commission found that it did and asserted licensing jurisdiction on that basis. On appeal, we vacated the Commission's order. *City of Centralia v. FERC,* 661 F.2d 787, 793 (9th Cir.1981) (*Centralia I*). We found the Yelm Project's effect on interstate commerce was insufficient to confer federal jurisdiction. *Id.* However, we expressly noted that the Nisqually River's navigability, and the possibility of federal jurisdiction on that basis, were not in issue and that no evidence on navigability had been presented. *Id.* We concluded that the Commission was not precluded from asserting jurisdiction in the future on the basis of navigability. *Id.* Accordingly, the Commission alternatively asserted the navigability theory of jurisdiction, and set the issue for hearing. An initial decision by an administrative law judge found the Nisqually River to be navigable. 27 FERC ¶ 63,058 (May 22, 1984). The City appealed that decision to the Commission, which upheld it. 33 FERC ¶ 66,221 (November 14, 1985). The Commission denied rehearing and issued a final order finding the Nisqually River navigable in fact. 38 FERC ¶ 61,274 (March 18, 1987). The City petitions for review of the final order finding navigability and thereby conferring federal jurisdiction.

## ANALYSIS

The Nisqually River empties into Puget Sound to form a delta commonly identified as the Nisqually Mud Flats. A tidal range of 14 feet occurs in this area. At high tide, enough water covers the flats to float boats, while at low tide the river channel can become inaccessible. The tide affects the river up to approximately rivermile 4. As pointed out above, the Yelm Project is located at rivermiles 26.2 and 12.7, with the

---

[*] Hon. J. Clifford Wallace has been drawn to replace Hon. J. Blaine Anderson, who died after argument and submission of this case.

[**] The Honorable Earl H. Carroll, United States District Judge, District of Arizona, sitting by designation.

1. "Rivermiles" are measured from the mouth (rivermile 0) to the headwaters.

resulting diverted stretch of river being 13.5 miles long. Thus, our examination of navigability must focus on the stretch of river from the Yelm Project to the mouth 26.2 miles below. To support a finding of navigability, the evidence must show two things: first, that the Nisqually River is and was capable of transporting goods along its length below the Yelm Project; and second, that the Nisqually Mud Flats at the river's mouth are and were also navigable, thereby providing passage to Puget Sound to form an interstate, not simply intrastate, waterway.

## 1. STATUTORY JURISDICTION

Section 4(e) of the Federal Power Act authorizes the Commission:

"To issue licenses to ... any corporation organized under the laws of the United States or any State thereof, or to any State or municipality for the purpose of constructing, operating, and maintaining dams, water conduits, reservoirs, power houses, transmission lines, or other project works necessary or convenient for the development and improvement of navigation and for the development, transmission, and utilization of power *across, along, from, or in any of the streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States,* or upon any part of the public lands and reservations of the United States (including the Territories), or for the purpose of utilizing the surplus water or water power from any Government dam...."

16 U.S.C. § 797(e) (emphasis added). Consistent with the power to issue licenses, section 23(b) of the Act provides that:

"It shall be unlawful for any person, State, or municipality, for the purpose of developing electric power, to construct, operate, or maintain any dam, water conduit, reservoir, power house, or other works incidental thereto *across, along, or in any of the navigable waters of the United States,* or upon any part of the public lands or reservations of the United States (including the Territories) or uti-

lize the surplus water or water power from any Government dam, except under and in accordance with the terms of a permit or valid existing right-of-way granted prior to June 10, 1920, or a license granted pursuant to this chapter."

16 U.S.C. § 817(1) (emphasis added). Section 3(8) of the Act defines "navigable waters" as:

"those parts of streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, and which either in their natural or improved condition notwithstanding interruptions between the navigable parts of such streams or waters by falls, shallows, or rapids compelling land carriage, are used or suitable for use for the transportation of persons or property in interstate or foreign commerce, including therein all such interrupting falls, shallows, or rapids, together with such other parts of streams as shall have been authorized by Congress for improvement by the United States or shall have been recommended to Congress for such improvement after investigation under its authority."

16 U.S.C. § 796(8). This definition is consistent with the construction given under the U.S. Const. art. I, § 8, which confers upon Congress the authority to regulate commerce among the several states.

## 2. COMMERCE CLAUSE CASE STANDARD

The standard for navigability under the commerce clause, U.S. const. art. I, § 8, cl. 3, was set forth in *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871), where the Supreme Court held that to be navigable in law, the waterway must be navigable in fact. *Id.* at 563. Rivers are navigable in fact

"when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water."

*Id.* Therefore, a river is navigable in law when it is navigable in fact and that navigability extends to other states. That is, rivers

"constitute navigable waters ... when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water."

*Id.* This test has never been in question and has been repeatedly applied. *See United States v. Appalachian Electric Power Co.,* 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); *United States v. Utah,* 283 U.S. 64, 51 S.Ct. 438, 75 L.Ed. 844 (1931); *The Montello,* 87 U.S. (20 Wall.) 430, 22 L.Ed. 391 (1874).

The Ninth Circuit has followed this standard in defining navigability. *Alaska v. United States,* 754 F.2d 851, 853 (9th Cir. 1985); *Sierra Pacific Power Co. v. FERC,* 681 F.2d 1134, 1137–38 (9th Cir.1982); *Oregon v. Riverfront Protection Ass'n,* 672 F.2d 792, 794 (9th Cir.1982); *Puget Sound Power & Light Co. v. FERC,* 644 F.2d 785, 787 (9th Cir.1981). Although we have recognized that navigability for purposes of title to riverbeds does differ from navigability for purposes of federal regulatory jurisdiction over power plants under the commerce clause, *see Oregon v. Riverfront Protection Ass'n,* 672 F.2d at 794 n. 1, the two standards are nearly identical, with the commerce clause test being adopted and applied to riverbed title cases. *Id.*[2]

■ Navigability under the Federal Power Act requires a river to be suitable, currently or in the past, for transportation of persons or property between states. *Puget Sound Power & Light,* 644 F.2d at 787. However, the river need not be suitable only in its ordinary condition. Suitability may be the result of artificial improvements. *Appalachian Electric Power Co.,* 311 U.S. at 409, 61 S.Ct. at 300; *In re Garnett,* 141 U.S. 1, 17, 11 S.Ct. 840, 844,

35 L.Ed. 631 (1891). Finally, navigability may still exist despite the obstruction of falls, rapids, sand bars, carries or shifting currents. They are simply factors to consider. *United States v. Utah,* 283 U.S. at 86, 51 S.Ct. at 444. It is sufficient if, in the totality, the evidence shows navigability of a substantial part of the waterway. *Appalachian Electric Power Co.,* 311 U.S. at 410, 61 S.Ct. at 300. Therefore, use of the river need not be without difficulty, extensive, or long and continuous, *Puget Sound Power & Light,* 644 F.2d at 788–89, unless navigability is confined to exceptional conditions or short periods of temporary high water. *United States v. Utah,* 283 U.S. at 87, 51 S.Ct. at 445.

### 3. EVIDENCE PRESENTED

a) Standard of Review

We review the Commission's finding of navigability for substantial evidence. *Puget Sound Power & Light,* 644 F.2d at 787. The Commission's finding as to the fact of navigability, if supported by substantial evidence, is conclusive. 16 U.S.C. § 825*l*(b).

b) Evidence of Navigability on the River

■ The City argues that the evidence of navigability is limited to small segments of the Nisqually River, and that substantial evidence showing the Yelm Project to be located on navigable segments is lacking. Essentially, the City asks us to reweigh the evidence and reach a conclusion opposite from the Commission's. We refuse to do so.

Downstream flotation of shingle bolts is a sufficient test for a finding of a river's navigable character. *Puget Sound Power & Light,* 644 F.2d at 788–89.

Direct testimony showed that shingle bolts were floated down the river. [ER:50]. The record of shingle bolt drives also includes photographs of bolts actually being dumped into the river. [ER:44]. Of the shingle mills on the river, the largest was the Card Mill, located at rivermile 2.5,

---

**2.** However, a state's title to submerged lands under the public trust doctrine can be determined using either the navigability standard or the ebb-and-flow test. *Phillips Petroleum Co. v. Mississippi,* —— U.S. ——, 108 S.Ct. 791, 797, 98 L.Ed.2d 877 (1988).

which operated in the early 1900's. The testimony of witnesses established that the mill was supplied by bolts from bolt camps located along the river at least as far up as rivermile 40.

The City argues that the evidence of bolt floating does not show where on the river it occurred, or that it occurred at the Yelm Project; that skid roads were also used, which shows that floating logs on the river was not feasible; and that the photographs were not identified as actually being of the Nisqually River.

The City's witnesses' testimony of the nonuse of the river for bolt drives—e.g., Mr. Raney's—does not defeat a finding of navigability. Even though bolts may have been driven with difficulty and use of the river was not continuous over time, these conditions do not preclude a finding of navigability. *Puget Sound Power & Light,* 644 F.2d at 789. The evidence of bolt drives may not be plenary, but it is sufficiently substantial to support the Commission's findings.

c) Evidence of Navigability at Yelm Project Locations

The City argues that the evidence of bolt floating does not establish continuous navigability between the mouth and rivermile 41, and, more importantly, does not demonstrate navigability along the segments on which the Yelm Project facilities are located.

It is true that evidence of bolt camps showed they were located along the river at intermittent points, and that the evidence of use up to or past rivermile 41 was inconclusive. However, to establish navigability, it need not be established that the river was actually being used continuously all the way up to rivermile 41 for floating bolts. It is sufficient if actual use, or simply susceptibility for use under normal flow conditions, is shown. *Puget Sound Power & Light,* 644 F.2d at 787. Actual use at intermittent points in the river was shown by evidence of bolt camps. There was no showing that the river was incapable of use for bolt floating at any of the areas included in the Yelm Project. There-

fore, it can be inferred that the river was susceptible of being used at any location of the Yelm Project. On this basis, navigability is established for all areas subject to the Yelm Project.

d) Evidence of Navigability of the Mud Flats

Finally, the City contends that even though the river is navigable at different points along its route, the Mud Flats are not navigable and therefore the interstate highway linkage requirement is not fulfilled. We disagree.

First, the testimony of Mr. Walter shows the Flats are accessible by boat. "There is a known river channel that provides entrance at all tidal levels, and at mid to high tides boats may cross the Nisqually Delta almost without regard to the channel." [ER:54].

Second, lack of evidence of bolt driving through the flats will not defeat a finding of navigability. Use of private boats is relevant evidence and may demonstrate similar types of commercial navigation. *Puget Sound Power & Light,* 644 F.2d at 788. The record shows small ferries were used to carry passengers across the river. [ER:47, 49]. This evidence certainly creates an inference of watercraft entering the river through the Mud Flats.

Finally, Mrs. Jenne testified that log rafting took place on the river. She also stated that at times these logs were floated "out to the bay" [Puget Sound] and then "rafted up and hauled off by tug." [ER:51].

On the basis of the testimony and the documentation of ferry use on the river, there was substantial evidence to support a finding that the Mud Flats are navigable. Since the Mud Flats are navigable, the Nisqually River forms a continuous interstate highway and not only an intrastate highway. The fact that a river's link with other interstate waters may be temporarily severed during low tides does not render the river non-navigable in its "natural condition." 16 U.S.C. § 796(8). Daily high tides are not the equivalent of seasonal,

unpredictable high water flows. *See Washington Water Power Co. v. FERC,* 775 F.2d 305, 327 (D.C.Cir.1985).

Because we find substantial evidence to support the Commission's finding that the Nisqually Mud Flats are navigable-in-fact, we need not reach its additional findings that "the 'ebb-and-flow' test is a valid test of navigability under the [Federal Power Act]" and that "the Nisqually Tidal Flats are 'navigable waters,' because they are tidal waters." 33 FERC ¶ 61,274 at 61,923.

## CONCLUSION

A review of the record shows substantial evidence to support the Commission's finding that the Nisqually River is navigable. Shingle bolts were floated down the river. From rivermile 41 downstream to the Nisqually's mouth at the Mud Flats, no obstructions were shown which would negate the legal standard of susceptibility for use. On this basis, we hold the Nisqually River is navigable under the commerce clause as a matter of law because we affirm the Commission's finding that the river is navigable as a matter of fact. Therefore, the Commission did not err in asserting jurisdiction over the Yelm Project under the Federal Power Act.

AFFIRMED.