**CONSOLIDATED HYDRO, INC., Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 91–1135.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1992.

Decided July 7, 1992.

John D. Gleason, with whom John W. Bernotavicz, Portland, Me., and Donald H. Clarke, Washington, D.C., were on the brief, for petitioner.

Katherine Waldbauer, Atty., Federal Energy Regulatory Com'n ("FERC"), with whom William S. Scherman, Gen. Counsel, and Jerome M. Feit, Sol., FERC, Washington, D.C., were on the brief, for respondent.

Before BUCKLEY, HENDERSON, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Consolidated Hydro, Inc. petitions for review of a determination by the Federal Energy Regulatory Commission that a hydroelectric project at Damariscotta Mills in Lincoln County, Maine is subject to its licensing jurisdiction because it is located on "navigable waters" as defined in the Federal Power Act. Petitioner challenges as unsupported by substantial evidence the agency's alternative findings that (1) the stream on which the project is located has been used for purposes of interstate commerce; and (2) even if, as petitioner contends, commerce has had to be portaged around it, the stream is no more than an "interruption" in an otherwise continuous interstate waterway and, as such, within the statutory definition of "navigable waters." We affirm the Commission's assertion of jurisdiction on the second ground and do not address the first.

## I. BACKGROUND

### A. Statutory Framework

The Federal Power Act, 16 U.S.C. §§ 791a *et seq.* (1988), requires any party seeking to construct or operate a hydroelectric project on navigable waters of the United States to obtain a license from the Federal Energy Regulatory Commission ("FERC" or "Commission"). *See id.* § 817. The Act defines "navigable waters" as

those parts of streams or other bodies of water over which Congress has jurisdiction under its authority to regulate commerce with foreign nations and among the several States, and which either in their natural or improved condition *notwithstanding interruptions between the navigable parts of such streams or waters by falls, shallows, or rapids compelling land carriage,* are used or suitable for use for the transportation of persons or property in interstate or foreign commerce, including therein all such interrupting falls, shallows, or rapids[.]

*Id.* § 796(8) (emphasis added).

The Supreme Court has held that waterways are "navigable" if they form "in their ordinary condition by themselves, or by

uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water." *The Daniel Ball,* 77 U.S. (10 Wall) 557, 563, 19 L.Ed. 999 (1870). Moreover, "once found to be navigable, a waterway remains so." *United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 408, 61 S.Ct. 291, 299, 85 L.Ed. 243 (1940) (footnote omitted). Finally, "[t]here has never been doubt that the navigability referred to in [past] cases was navigability *despite* the obstruction of falls, rapids, sand bars, carries or shifting currents." *Id.* at 408–09, 61 S.Ct. at 299–300 (emphasis added and footnote omitted).

### B. Facts

A map of the Damariscotta Mills area is annexed to the opinion as Appendix A, and one of the Damariscotta Lake and River region is annexed as Appendix B. Damariscotta Lake is located in the northwest corner of the first map. After flowing out into a small pond, the water divides into three streams as it moves past two small islands. The Damariscotta Mills hydroelectric project ("Project") is located on the Old Stream, the largest, westernmost of these. The three streams merge into the Damariscotta River, which flows into the Great Salt Bay and then south from the bay to the Atlantic Ocean.

The parties dispute whether the Old Stream is part of the Damariscotta River itself (as FERC describes it) or a separate, distinct body of water. The parties agree, however, on the general topography of the stream and the nature of the Project. On leaving the pond, the water flows over a natural ledge (now supplemented by the Project dam) and drops some forty or fifty feet over the Old Stream's tenth-of-a-mile length. Running alongside the stream are roads built in the 18th and 19th centuries to haul materials to various mills at the site and from the lake to the bay.

The Project was constructed prior to 1923 on the site of a former sawmill. It consists primarily of a dam, powerhouse, and penstock, and rates 500 kilowatts of power. The Project is currently owned and operated by petitioner Consolidated Hydro, Inc.

Before issuing the order that is challenged here, FERC prepared a Navigability Report on the history of navigation and commerce in the Damariscotta region. The Commission found that Abenaki Indians inhabited the region in pre-colonial and colonial times. They navigated the lower parts of the river and may have canoed its upper reaches as well. Initial European settlements were established at the mouth of the river in the early 1600's. By 1700, explorers and settlers were moving up the valley.

Lumbering operations were conducted in the region through most of the 18th and 19th centuries. William Vaughan founded the first lumber mill near the Project site in approximately 1730; others soon followed. The lake offered convenient transportation by water for timber, which was rafted to the mills. The Navigability Report states that with the development of shipbuilding along the Damariscotta River after the American Revolution, logs and lumber loads would be floated or rafted to the yards from the mills and the lake above. Ships built at the yards voyaged around the world, often carrying lumber or other forest products.

Finally, the Navigability Report records a canoe race sponsored in 1973 by the combined Rotary Club of Damariscotta and Newcastle (towns located south of the Project on the Damariscotta River) that, in FERC's view, demonstrated the navigability of the waters. The race spanned the length of Damariscotta Lake and continued south through the Great Salt Bay to a point on the river between the two communities. A portage of one hundred yards around the Project site itself was all that was required to complete the journey.

Based on its Navigability Report, FERC issued an order finding jurisdiction over the Project. *See Consolidated Hydro, Inc.,* 48 FERC ¶ 62,212 (Sept. 21, 1989). FERC found that "[t]he Damariscotta Mills hydropower project is located on the Damariscotta River" and that "[h]istorical evidence shows that ... the Damariscotta Mills hy-

dropower project['s] [waters] were utilized for commercial navigation." *Id.* at 63,286. The Commission also found that

> log drives went down the Damariscotta, past the project, to mills and shipyards along the river. The products produced at these mills, including pulp, lumber and paper products, were sent by water to markets throughout the world.

*Id.* Accordingly, FERC ordered petitioner to obtain a license and to otherwise comply with its regulations. *See id.* at 63,287.

Petitioner appealed the order, challenging the sufficiency of the evidence supporting the Commission's findings that the Old Stream was part of the Damariscotta River and that it was navigable. *See Consolidated Hydro, Inc.*, 53 FERC ¶ 61,256, at 62,-033–34 (Nov. 26, 1990) ("Order Denying Appeal"). In denying the appeal, however, FERC stated an additional basis for its jurisdictional finding:

> As discussed above, a body of water can be navigable ... [under] the [Act] "notwithstanding interruptions" in the form of falls, shallows, or rapids. The point is not whether such interruptions exist but whether they can be or have been bypassed by persons or property continuing along an aqueous highway of commerce.

*Id.* at 62,034 (quoting 16 U.S.C. § 796(8)). FERC concluded: "Here, [ ] portages are eminently feasible, and were commonly used." *Id.*

After pursuing other administrative avenues, *see Consolidated Hydro, Inc.*, 54 FERC ¶ 61,067 (Jan. 25, 1991) (denying petition for rehearing), Consolidated Hydro filed a timely petition for review.

## II. Discussion

Our standard of review is provided by the Act: "The finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive." 16 U.S.C. § 825*l* (b) (1988). As noted above, FERC grounded its finding of jurisdiction on two alternative theories: (1) The waters at the Project had been navigated in the past, and (2) a need to portage around the Project is consistent with such a finding because the portage is an "interruption[ ] between the

navigable parts of [ ] streams or waters" that are used in interstate commerce. *See* 16 U.S.C. § 796(8). Because we find that the second ground conforms with the law and is clearly supported by substantial evidence, we affirm without addressing the first.

As an initial matter, there is no question that there is substantial evidence showing that commerce has been conducted from the lake down to the river below, and on to the Atlantic. Courts have consistently found the downstream flotation of wood to constitute sufficient evidence of navigability. For example, in *Puget Sound Power & Light Co. v. FERC*, 644 F.2d 785, 788 (9th Cir.1981), the court found navigability in the downstream flotation of shingle bolts. It also considered evidence of canoeing "relevant" to navigability. *Id.*

As FERC's Navigability Report makes plain, there is evidence that (1) logs were harvested above the Damariscotta Lake and floated to mills located at the Project site; (2) lumber and other timber products were shipped from the mills through the Great South Bay to shipyards located on the Damariscotta River; and (3) a recent canoe race was held from Damariscotta Lake to a point on the river below the bay, with only a hundred-yard portage at the Project site.

Petitioner argues that FERC's reliance on past use of the Damariscotta River and Lake is misplaced, as the waters at the Project form a separate non-navigable waterway, the Old Stream. Petitioner claims that while logs were floated to the mills from the lake above and from the river below, the Old Stream itself was never used to transport logs or other goods between the lake and the river; and that the lumber and other goods produced at the mills were transported by land to the point where the stream joined the river. Petitioner contends that the existence of roads along the Old Stream supports this view.

According to petitioner, because the Old Stream itself has never been part of a continuous highway for commerce, it is not an "interruption" within the meaning of

the section defining "navigable waters." *See* Brief for Petitioner at 17–18 (citing *Sierra Pacific Power Co. v. FERC*, 681 F.2d 1134, 1139 (9th Cir.1982), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1769, 76 L.Ed.2d 343 (1983)). In *Sierra Pacific*, the Ninth Circuit rejected an agency finding of navigability because there was no evidence that the lumber industry had made commercial use of the section of a river that flowed across the border between two States. *Id.*

We cannot accept petitioner's argument. There is ample evidence to support a finding of navigability even if we assume *arguendo* that the Old Stream is itself a discrete, non-navigable body of water. Petitioner does not deny that for a period of well over a century, logs harvested around Damariscotta Lake were floated to the head of the Old Stream and either delivered to the mills located on its banks or portaged to the river, and that logs or products made from them continued down the river to the Atlantic Ocean where they entered into interstate and international trade. Against this clear history of the movement of people and goods from the upper reaches of the Damariscotta region to the Atlantic, petitioner interposes the fact that part of this voyage was made by land—over portages as short as one-tenth of a mile.

In rejecting this argument on appeal, FERC observed that

> [n]avigability turns not on whether a short portage is advisable or required, but rather, on whether such a portage was or is feasible. Here, such portages are eminently feasible, and were commonly used.

Order Denying Appeal at 62,034. The Commission is on sound legal ground. In *Montana Power Co. v. FPC,* 185 F.2d 491, 494 (D.C.Cir.1950), *cert. denied,* 340 U.S. 947, 71 S.Ct. 532, 95 L.Ed. 683 (1951), we stated that:

> The [Federal Power Act] specifically contemplates that the "navigable parts" of streams may be interrupted by falls, rapids, and shallows "compelling land carriage" to circumvent them. Such inter-

ruptions do not render an otherwise navigable stream non-navigable.

We held that the Missouri River was navigable in the area of Fort Benton, Montana, despite the presence of the Great Falls of Missouri, "a series of rapids and falls which descend about 520 feet in 17 miles, and which have always presented a natural barrier to through navigation[,]" because "gold miners in considerable number [had] travelled downstream with the aid of a portage or 'land carriage' around the falls." *Id.* at 493–94. *See also State of N.Y. Ex Rel. N.Y. Dep't of Environ. Cons. v. FERC,* 954 F.2d 56, 60–62 (2d Cir.1992) (reversing FERC's finding of non-navigability due to the presence of a 110–foot waterfall on the Salmon River); *Connecticut Light and Power Co. v. FPC,* 557 F.2d 349, 356 (2d Cir.1977) (upholding finding of navigability despite the presence of "numerous rapids, waterfalls and boulders which interdict any significant commerce on [sic] regular travel[.]"); *Sawczyk v. U.S. Coast Guard,* 499 F.Supp. 1034, 1040 (W.D.N.Y. 1980) (Niagara River found navigable despite presence of Niagara Falls).

Nor is it relevant that the Old Stream might properly be considered a body of water distinct from the Damariscotta River. As the Supreme Court has held, waterways are navigable if they form "in their ordinary condition by themselves, *or by uniting with other waters,* a continued highway over which commerce is or may be carried on with other States or foreign countries[.]" *The Daniel Ball,* 77 U.S. at 563 (emphasis added).

Moreover, petitioner can find little comfort in *Sierra Pacific.* There, the Ninth Circuit reversed FERC's finding that the Truckee River, which flows from California into Nevada, was navigable for purposes of the Act. The court rejected FERC's argument that the segment of the Truckee straddling the state line, which contained "two long boulder-filled drops ... and [where] the gradient is 100 feet per mile," was merely an "interruption" in an otherwise continuous interstate waterway. *Sierra Pacific,* 681 F.2d at 1139. FERC had relied on evidence that logs cut in California were floated along the river to sawmills

within that State, and that the Truckee was used in a similar *intrastate* manner in Nevada. There was no substantial evidence that the lumber industry utilized the middle portion of the river which crosses the border between the two states. Logs were not floated from California to Nevada on the Truckee. Nor is there any evidence that property or persons ever traveled downstream across the stateline reach of the Truckee with the aid of a portage or "land carriage."

*Id.* Thus, the court found that the California–Nevada segment of the Truckee could not be considered an interruption in a continuous highway of interstate commerce. *Id.*

Here, by contrast, FERC has cited specific evidence of commercial activity along the entire length of the waterway from Lake Damariscotta to the Atlantic and the world beyond. Unlike the case in *Sierra Pacific*, where the impassable stretch of river divided the Truckee into two separate intrastate waterways, the Old Stream was merely an interruption, surmounted by a brief passage on land, in what is otherwise a continuous waterway over which interstate commerce has and can continue to be conducted. Under settled law, these facts constitute substantial evidence that the Project is situated on "navigable waters" as defined by the Act.

### III. Conclusion

The Commission has marshaled substantial evidence demonstrating that even if the Old Stream is not itself navigable, it falls within the statutory definition of "navigable waters." Because FERC has established a sufficient basis for jurisdiction over the Damariscotta Mills hydropower project, the petition for review is

*Denied.*

## APPENDIX A

APPENDIX B

Map of Damariscotta River and Lake region