# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 5, 2009        Decided May 1, 2009

No. 08-1165

ASSOCIATION OF FLIGHT ATTENDANTS–CWA, AFL-CIO,
PETITIONER

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION,
RESPONDENT

VIRGIN AMERICA INC.,
INTERVENOR

———

On Petition for Review of an
Order of the Department of Transportation,
National Transportation Safety Board

———

*Susan B. Jollie* argued the cause for the petitioner. *Edward J. Gilmartin* was on brief.

*Mary F. Withum*, Trial Attorney, United States Department of Transportation, argued the cause for the respondent. *Paul M. Geier*, Assistant General Counsel, *Dale C. Andrews*, Deputy Assistant General Counsel, and *Robert B. Nicholson* and *Kristen C. Limarzi*, Attorneys, United States Department of Justice, were on brief.

*Kenneth P. Quinn* argued the cause for the intervenor. *Jennifer Trock* was on brief.

Before: HENDERSON, BROWN and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Association of Flight Attendants–CWA (AFA) challenges the decision of the United States Department of Transportation (DOT) to issue Intervenor Virgin America, Inc. (Virgin America) a certificate of public convenience and necessity to provide interstate air transportation as an "air carrier" under 49 U.S.C. § 41102. AFA asserts that DOT erred when it found that Virgin America is "under the actual control of citizens of the United States," as required by 49 U.S.C. § 40102(a)(2) and (a)(15). Because AFA has not demonstrated that any of its members suffered an injury-in-fact that was caused by DOT's order certifying Virgin America, we conclude AFA has failed to demonstrate its standing under Article III of the United States Constitution.

## I.

On December 8, 2005, Virgin America filed an application for an interstate air certificate. Under 49 U.S.C. § 41102, DOT is authorized to issue a certificate of public convenience and necessity for air transportation to an "air carrier," which term is defined to include only "a citizen of the United States," *id.* § 40102(a)(2); "a citizen of the United States" is defined in turn to include a corporation which meets each of four requirements: (1) it is "organized under the laws of the United States or a State, the District of Columbia, or a territory or possession of the United States," (2) its "president and at least two-thirds of the board of directors and other managing officers are citizens of the United States," (3) it is "under the actual control of citizens of the United States," and (4) "at least 75 percent of the voting interest is owned or controlled by persons that are citizens of the United States." *Id.* § 40102(a)(15)(C). A number of airlines and unions (including petitioner AFA) objected to Virgin America's

application on the ground that the airline did not meet the statutory definition of a "citizen of the United States" because it was in fact owned and controlled by United Kingdom citizen Richard Branson, founder of Virgin Atlantic Airways, and affiliated parties. On December 27, 2006, DOT denied the application, finding that the airline did not meet the requirements of section 40102(a)(15) because less than 75 % of its total equity was owned by United States citizens and it was not under the actual control of United States citizens. Order to Show Cause, Docket No. OST-2005-23307, at 1 (Dec. 27, 2006) (DOT).

Virgin America filed a revised application, which DOT tentatively approved—subject to further modifications—on March 20, 2007. Order to Show Cause, Docket No. OST-2005-23307, at 1-2 (Mar. 20, 2007) (DOT). Virgin America agreed to most of DOT's modifications and on May 18, 2007, DOT approved the application and issued "a certificate of public convenience and necessity to Virgin America Inc., to engage in interstate scheduled passenger air transportation" subject to certain terms and conditions set out in an appendix. Final Order, Docket No. OST-2005-23307, at 5 (May 18, 2007) (DOT). In an order issued August 17, 2007, DOT memorialized an oral decision of August 7, 2007, which had made the certificate immediately effective. Order Confirming Oral Actions and Issuing Effective Certificate, Docket Nos. OST-2005-23307, OST-2007-28673, at 1 (Aug. 17, 2007) (DOT).

Meanwhile, AFA filed a petition for review of the Final Order in the United States Court of Appeals for the Ninth Circuit on July 17, 2007. By order filed April 21, 2008, the Ninth Circuit granted DOT's motion to transfer the petition to this Circuit pursuant to 28 U.S.C. § 1631 because AFA has its principal place of business in the District of Columbia.

4

**II.**

AFA challenges DOT's decision to issue a certificate to Virgin America as arbitrary and capricious, 5 U.S.C. § 706(2)(A), and unsupported by substantial evidence, 49 U.S.C. § 46110(c). Before we address the merits of AFA's petition, we must consider whether the petitioner has Article III standing to bring its challenge. *See S. Cal. Edison Co. v. FERC*, 502 F.3d 176, 179 (D.C. Cir. 2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-102 (1998)). AFA asserts standing to bring this challenge on behalf of its members, Pet'r Br. at 22, and must therefore establish that " '(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Int'l Bhd. of Teamsters v. Transp. Sec. Admin.*, 429 F.3d 1130, 1135 (D.C. Cir. 2005) (quoting *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996)) (internal quotation omitted). We conclude that AFA has failed to make the threshold showing that at least one of its members has Article III standing to sue in his own right.

"The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability." *Miami Bldg. & Constr. Trades Council v. Sec'y of Def.*, 493 F.3d 201, 205 (D.C. Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (internal quotation omitted). Thus, to establish standing, a litigant must demonstrate a "personal injury fairly traceable to the [opposing party's] allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)). AFA asserts its members are injured by DOT's certification

order because of the increased competition it caused in the markets Virgin America entered, which in turn caused other airlines, which employ AFA members, to reduce the number of flights in those markets and, consequently, the number of hours their flight attendants work. Because the claimed injury—with its attenuated chain of causation—is not "selfevident [sic]," it was incumbent on AFA to "establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in [this] review proceeding," that is, "with its opening brief." *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002); *see* D.C. Cir. R. 28(a)(7) ("In cases involving direct review in this court of administrative actions, the brief of the appellant or petitioner must set forth the basis for the claim of standing. . . . When the appellant's or petitioner's standing is not apparent from the administrative record, the brief must include arguments and evidence establishing the claim of standing." (citing *Sierra Club*, 292 F.3d at 900-01)). AFA has failed to meet its burden of production because it has not " 'show[n] a "substantial probability" . . . that [DOT] caused its injury.' " *Int'l Bhd. of Teamsters*, 429 F.3d at 1134 (quoting *Sierra Club*, 292 F.3d at 899 (quoting *Am. Petroleum Inst. v. EPA*, 216 F.3d 50, 63 (D.C. Cir. 2000))).

In support of standing, AFA appended to its opening brief the September 26, 2008 affidavit of Kelle Porter Wells, AFA Master Executive Council President at Alaska Airlines, Pet'r Br. at A-213. Wells's affidavit recites in relevant part that "DOT's approval of Virgin America to operate as a domestic U.S. carrier has directly increased competition with Alaska Airlines and among other factors, led it to begin a program to reduce flights and staff," that "[i]n late July 2008 AFA and [Wells] were told by Alaska Airlines that it would be forced to reduce capacity by what it then projected to be 5% for the last quarter of [2008], and most likely to continue through 2009" and that on September 25, 2008, "the Managing Director of Crew

Scheduling at Alaska Airlines told [her] that . . . there would still need to be an involuntary furlough of flight attendants." *Id*. at A-214-15. These averments are insufficient to establish the requisite causation.

In *Sierra Club*, we made clear the "petitioner's burden of production in the court of appeals is . . . the same as that of a plaintiff moving for summary judgment in the district court: it must support each element of its claim to standing 'by affidavit or other evidence.' " *Sierra Club*, 292 F.3d at 899 (quoting *Defenders of Wildlife*, 504 U.S. at 561). Moreover, a supporting affidavit " 'must "set forth". . . "specific facts" ' " pursuant to Federal Rule of Civil Procedure 56(e), *id*. (quoting *Defenders of Wildlife*, 504 U.S. at 561(quoting Fed. R. Civ. P. 56(e))), that is, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated," Fed. R. Civ. P. 56(e)(1). Thus, "[a]lthough, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *see also Dist. Intown Props. Ltd. P'ship v. District of Columbia*, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant *except for* conclusory allegations lacking any factual basis in the record.") (emphasis added). Wells's assertion of causation is just such a conclusory statement.

In *Greene*, we affirmed the grant of summary judgment to the defendant on the plaintiff's claim of retaliatory failure to hire because the district court correctly declined to accept as true the plaintiff's "conclusory" representation in an affidavit that "she applied for summer jobs in 1996 and 1997 and was not hired although 'another student, who had less experience and education was hired back' in 1996." 164 F.3d at 675. "Absent

supporting facts," we explained, this statement did not demonstrate the requisite retaliatory animus because "a jury would be in no position to assess her claim of superiority." *Id*.; *see also Hussein v. Nicholson*, 435 F.3d 359, 365 (D.C. Cir. 2006) (affirming summary judgment in religious discrimination suit because "district court correctly found that [appellant's] evidence of religious animus consisted merely of conclusory allegations in his own affidavit") (citing *Dist. Intown Props.*, 198 F.3d at 878). Wells's causation claim fares no better.

While Wells's affidavit cites Alaska Airlines officials as the source of the claimed injury—"an involuntary furlough" resulting from the fact that Alaska Airlines "would be forced to reduce capacity"—it offers no authority for its claim that "DOT's approval of Virgin America to operate as a domestic U.S. carrier" was among the "factors" that "led [Alaska Airlines] to begin a program to reduce flights and staff." Pet'r Br. at A-214-15. Competition from Virgin America may have played a role in Alaska Airlines's decision to reduce flights and staff—or the decision may have been attributable entirely to other factors, such as higher fuel prices and a sinking economy. *See* Dan Richman, *Alaska to Cut Flights, Jobs*, Seattle Post-Intelligencer, Sept. 12, 2008, http://www.seattlepi.com/business/378900_alaska13.html ("With the announcement that it will lay off up to 10 percent of its work force and make further cuts to its flight schedule, Alaska Airlines has joined the ranks of troubled airlines both here and abroad. Many U.S. airlines are cutting both jobs and flights as they struggle with high fuel prices and a troubled economy."). We cannot tell the cause from the record and we see no basis in the affidavit—which itself provides no factual support for the asserted causation—to suppose that Wells had personal knowledge of the cause or was otherwise competent to testify as to its nature. Thus, the affidavit's assertion of causation has no more force under the summary judgment standard we apply than if it were alleged in a complaint. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990) ("The object of [Rule 56(e)'s "specific facts" requirement] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."); *cf. Tex. Indep. Producers & Royalty Owners Ass'n*, 410 F.3d 964, 972-73 (7th Cir. 2005) (rejecting as "conclusory" affidavits' allegations that environmental group's individuals were harmed by EPA's authorization of general permits for construction site discharges because group "fail[ed] to adduce specific facts in its proffered affidavits to support its claim that the water bodies are 'directly affected by pollution from construction activities subject to the General Permit' "); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 459 (5th Cir. 2005) (rejecting air cargo company's claim of injury from U.S. Department of Labor ruling that pilots were subject to prevailing wage requirements because "nothing in the record, beyond a conclusory statement in the affidavit of its Chief Executive Officer," supported "assertion that an increased prevailing wage determination will interfere with its ability to assign pilots according to standard operating procedures and business considerations").

Stripped of the conclusory causal averment, Wells's affidavit demonstrates only that as of December 2007 Alaska Airlines planned to reduce capacity and furlough flight attendants. Missing is the crucial causal connection tying the actions to competition from Virgin America rather than to some other factor. For this reason, we conclude that AFA has failed to meet its burden of production under *Sierra Club* to demonstrate with its opening brief that its members have suffered or will suffer any "personal injury fairly traceable to [DOT's] allegedly unlawful conduct." *Allen v. Wright*, 468 U.S. at 751.[1] Nor do the circumstances of this case persuade us we

---

[1] AFA also appended to its opening brief a March 7, 2007 e-mail ("representative of several hundreds of communications that [DOT]

should look beyond the opening brief for evidence of standing.

This is not a case where the petitioner "reasonably, if inaccurately," assumed its standing was self-evident when it filed its opening brief. *See Am. Library Ass'n v. FCC*, 401 F.3d 489, 490-91 (D.C. Cir. 2005) (ordering supplemental post-argument submissions where "[b]oth petitioners and the Commission reasonably, if inaccurately, concluded that petitioners' standing was self-evident, so neither party pursued the matter in their opening briefs to the court" and intervenor only "interposed a vague and limited challenge to petitioners' standing"). To the contrary, AFA recognized the need to supplement the administrative record with Wells's affidavit and both DOT and, in particular, intervenor Virgin America affirmatively challenged AFA's constitutional standing. *See* Resp't Br. at 12; Intervenor Br. at 10-14. Nor is this a case where the petitioner's lapse should be excused because reply submissions "make it patently obvious that . . . at least one of [AFA's] members will suffer a cognizable 'injury in fact' as a result of the disputed order." *Communities Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 685 (D.C. Cir. 2004). The submissions appended to AFA's reply brief fall far short of this standard.

With its reply brief, AFA submitted a number of affidavits from furloughed AFA members, which simply proffer the factually unsupported opinion that one carrier or another furloughed the affiant or reduced his hours at least in part

---

was receiving concerning [the certificate application proceeding]"), which asserted simply—and speculatively (in the subjunctive)—that "*[s]hould* the DOT approve [its] application, Virgin America *could* displace thousands of good paying U.S. jobs." Pet'r Br. at A-207 (emphasis added). That approval "could" reduce flight attendant jobs does not show a "substantial probability" that it will do so. *Int'l Bhd. of Teamsters*, 429 F.3d at 1134.

because of Virgin America's entry into the passenger local transportation market.[2]  These averments are as conclusory as the similar claim in Wells's affidavit.  Nor have we any more reason to believe than we did of Wells that these affiants had personal knowledge of the cause of the reductions or were otherwise competent to testify as to causation.  We nonetheless examine one affidavit which provides somewhat more detail than the others.

The affidavit of Cathy J. Hampton, a furloughed United

---

[2]*See* Aff. of Dolores Myers at 2 (Nov. 21, 2008) ("The Department of Transportation allowance of entry by Virgin America into the U.S. market where United Airlines flies has been part of the reason that United Airlines has had to reduce its flight attendant staff."); Aff. of Kathleen Birner at 2 (Nov. 21, 2008) ("With the current loss of income due to the furlough, I have had to bring my expenses down to a minimum and currently go to the San Mateo Food Bank each month for food, because of the Department of Transportation's decision to allow Virgin America to operate within the United States of America."); Aff. of Roman Martinez at 2 (Nov. 28, 2008) ("I am unable to get my normal flight schedule due to overstaffing that is in part due to Virgin America's entry into the markets where I work as an Alaska Airlines flight attendant.");  Aff. of Kelly Kochanek at 2 (Dec. 16, 2008) ("I am unable to get my normal flight schedule with Alaska Airlines due to overstaffing, in part because of Virgin America's entry into the markets where I work as an Alaska Airlines flight attendant. . . . I can't get enough flying to cover my bills each month.  This was not a problem before Alaska had to make flight cutbacks, in part because the Department of Transportation has allowed Virgin America to fly domestic routes within the United States."); Aff. of Dawn Luckman at 2 (Dec. 16, 2008) ("I am unable to get my normal flight schedule with Alaska Airlines due to overstaffing, in part because of Virgin America's entry into the markets where I work as an Alaska Airlines flight attendant.").

Airlines (United) flight attendant, contains the following relevant statements:

> 4. I had heard from United that they were intending to reduce flying in the domestic network, specifically in markets served by lower cost carriers, and especially foreign airlines.

> 5. The one foreign-controlled airline that I heard about in the USA is Virgin America.

> 6. My understanding is that United is reducing its service because Virgin America is undercutting United, and "my flying" will go to Virgin America.

Aff. of Cathy J. Hampton at 2 (Nov. 21, 2008). Like Wells's, Hampton's affidavit identifies her employer as the source of her knowledge of the planned flight reductions and it goes even further to state that United itself represented it was planning reductions "in markets served by lower cost carriers, *and especially foreign airlines*." *Id*. (emphasis added). Yet the affidavit does not attribute to United—or to any other specific source—Hampton's assertion that Virgin America (and only Virgin America) is a "foreign-controlled airline." *Id*. Nor does she identify any objective factual basis for her vaguely couched "understanding" that "United was reducing its service *because* Virgin America is undercutting United." *Id*. (emphasis added). In short, neither Hampton's nor any other flight attendant's affidavit compensates for AFA's failure to demonstrate standing in its opening brief because they do not "make it patently obvious that . . . at least one of [AFA's] members will suffer a cognizable 'injury in fact' *as a result of* " DOT's certification order. *Communities Against Runway Expansion, Inc.*, 355 F.3d at 685 (emphasis added). Nor does the affidavit of AFA's "OSHA Specialist" Dinkar Mokadam, also appended to the reply brief, suffice.

Mokadam assembled Bureau of Transportation Statistics data for 2007 into three charts, which, the affidavit asserts, "*suggest*[] that introduction of VA nonstop services during August, 2007 *may have* contributed to reductions in market share for United Airlines' nonstop flight services between SFO and LAX, as well as JFK and LAX, in particular during the month of September, 2007." Aff. of Dinkar Mokadam at 2 (Nov. 25, 2008) (emphasis added). Even apart from the tentative and speculative tone of this statement, the charts are of little help because they show a reduction in *passenger market share*, that is United's percentage of all of the passengers flying in a particular market; they do not show the number of flights United operates—or even the actual number of passengers it carries—in a given market. In any event, even as to market share, the charts do not demonstrate a "substantial probability," *Int'l Bhd. of Teamsters*, 429 F.3d at 1134, that Virgin America's "nonstop services during August, 2007" "contributed to reductions . . . for United Airlines' nonstop flight services between SFO and LAX, as well as JFK and LAX, in particular during the month of September, 2007." Aff. of Dinkar Mokadam at 2 (Nov. 25, 2008). Although the charts reveal that United's market share of the New York/Los Angeles route decreased significantly in August-September 2007, they also show that United's market share of this route had been decreasing gradually since February 2007—months before Virgin America began flying in August 2007—and that United's market share of the New York/San Francisco route had started to drop significantly as early as February or March 2007 and had then leveled off and even risen slightly in September 2007 after Virgin America began service on the route in August, while United's market share of the Los Angeles/San Francisco route began to drop precipitously as early as May 2007.[3] Mokadam

---

[3]In fact, there is evidence Alaska Airline's immediate reaction to Virgin America's competition was to increase service. *See* Ben

also assembled a table showing the entry date of Virgin America into certain markets and the "numbers of recently announced furloughs of AFA flight attendant members at one or both airport domiciles," Reply Br. at RA-24 (case altered), but again there is nothing to causally tie the "recently announced" furloughs (as of Nov. 25, 2008) to Virgin America's entry into the identified markets (at various times from August 8, 2007 to September 4, 2008) rather than to other economic or other business reasons.

In sum, the only "evidence" supporting the causation prong of the standing test consists of the unsubstantiated allegations by AFA's members that DOT's certification of Virgin America and Virgin America's subsequent entry into various passenger carrier markets at least partially caused other airlines to reduce flights and to cut back flight attendants' working hours. Without some underlying factual basis for attributing furloughs and hour reductions to Virgin America's competing flights—rather than to other factors—we cannot accept these statements as anything other than conclusory and therefore inadequate under Rule 56(e). Because AFA did not demonstrate a "substantial probability," *Int'l Bhd. of Teamsters*, 429 F.3d at 1134, that Virgin America caused the alleged injuries to AFA's members, it failed to carry its burden of production to establish standing. Accordingly, we dismiss the petition for review for lack of subject matter jurisdiction.

*So ordered.*

---

Mutzabaugh, *Turf war? Alaska Air makes move ahead of Virgin America's Seattle debut*, USA Today, Jan. 18, 2008, http://blogs.usatoday.com/travel/flights/item.aspx?type=blog&ak=44337292.blog ("Alaska Airlines is beefing up its service between Seattle and six California markets, a move that comes just ahead of new competition coming from Virgin America.").