# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 20, 2011　　　Decided December 9, 2011

No. 10-5341

NATIONAL ASSOCIATION OF HOME BUILDERS ET AL.,
APPELLANTS

v.

ENVIRONMENTAL PROTECTION AGENCY ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:09-CV-00548)

*Norman D. James* argued the cause for the appellants. *Duane J. Desiderio* entered an appearance.

*Katherine J. Barton*, Attorney, United States Department of Justice, argued the cause for the appellees. *Andrew J. Doyle* and *Aaron P. Avila*, Attorneys, were on brief. *R. Craig Lawrence*, Assistant United States Attorney, entered an appearance.

Before: GINSBURG, HENDERSON and KAVANAUGH, *Circuit Judges.*[*]

---

[*]As of the date the opinion was published, Judge Ginsburg had taken senior status.

Opinion for the Court filed by *Circuit Judge* HENDERSON.[2]

KAREN LECRAFT HENDERSON, *Circuit Judge*: The National Association of Home Builders and its member organizations, Southern Arizona Home Builders Association and Home Builders Association of Central Arizona, appeal the dismissal of their lawsuit challenging the determination (Determination) by the United States Army Corps of Engineers (Corps) and the Environmental Protection Agency (EPA) (collectively, Agencies) that two reaches of the Santa Cruz River in southern Arizona constitute "traditional navigable water[s]" (TNW)[3] so as to come within the Agencies' regulatory authority under the Clean Water Act (CWA).[4]    NAHB challenges the TNW

---

[2]Circuit Judge Kavanaugh concurs in the opinion except for Part II.B.1.

[3]The "traditional definition" of " 'navigable waters' . . . required that the 'waters' be navigable in fact, or susceptible of being rendered so."  *See Rapanos v. United States*, 547 U.S. 715, 730 (2006) (plurality) (citing *The Daniel Ball*, 77 U.S. (10 Wall.) 557, 563 (1871)); *see also Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001) (Congress has "traditional jurisdiction over waters that were or had been navigable in fact or which could reasonably be so made."); *Consol. Hydro, Inc. v. FERC*, 968 F.2d 1258, 1259-60 (D.C. Cir. 1992) ("The Supreme Court has held that  waterways are 'navigable' if they form 'in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.'  Moreover, 'once found to be navigable, a waterway remains so.' " ) (quoting *The Daniel Ball*, 10 Wall. at 563).

[4]The three affiliated appellants make their arguments collectively as "Home Builders."  For convenience, we treat them as a single entity under the parent organization's acronym, NAHB.

Determination as both procedurally and substantively defective. The district court dismissed the complaint for lack of subject matter jurisdiction on the ground the CWA precludes a pre-enforcement challenge to a TNW Determination. We affirm the dismissal on the alternative jurisdictional ground that the appellants lack standing under Article III of the United States Constitution. *See Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 826 (D.C. Cir. 2007) ("Where both standing and subject matter jurisdiction are at issue . . . , a court may inquire into either and, finding it lacking, dismiss the matter without reaching the other.") (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).[5]

## I.

The CWA provides that "the discharge of any pollutant by any person"—i.e., "any addition of any pollutant to navigable waters from any point source"—"shall be unlawful" unless it complies with one of several enumerated CWA provisions, including sections 402 and 404. 33 U.S.C. §§ 1311(a), 1362(12).[6] Section 404 and 402 authorize the Agencies to issue permits, after notice and an opportunity for public hearing, to discharge into navigable waters dredged and fill material and other pollutants. 33 U.S.C. §§ 1344, 1342; *see Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,* 440 F.3d 459, 461 n.1 (D.C. Cir. 2006) (under CWA section 404, Corps issues

---

[5]Accordingly, we express no opinion regarding the district court's or this court's jurisdiction over a pre-enforcement challenge.

[6]The CWA defines "pollutant" as "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt and industrial, municipal, and agricultural waste discharged into water." 33 U.S.C. § 1362(6).

4

permits to discharge dredged and fill material and under section 402, EPA issues permits to discharge other pollutants). The CWA defines "navigable waters" as "the waters of the United States, including the territorial seas," 33 U.S.C. § 1362(7), a definition that has been construed to include certain adjacent waters and wetlands that are not themselves navigable. *See Rapanos v. United States*, 547 U.S. 715, 759 (2006).[7]

On May 23, 2008, the Corps issued a memorandum reciting that the two "[Santa Cruz] Reaches are navigable-in-fact, and thus a TNW, susceptible to use in interstate commerce associated with recreational navigation activities" and,

_____

[7]The Supreme Court has recognized that "the term 'navigable' is of 'limited import' and that Congress evidenced its intent to 'regulate at least some waters that would not be deemed "navigable" under the classical understanding of that term.' " *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 167 (2001) (quoting *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 133 (1985)); *see supra* note 2. The Court has not reached consensus, however, on the extent of the term's jurisdictional reach. In *Rapanos*, four justices limited "navigable water[s]" to "[o]nly those wetlands with a continuous surface connection to bodies that are 'waters of the United States' in their own right, so that there is no clear demarcation between 'waters' and wetlands." 547 U.S. at 742 (Scalia, J., plurality opinion). The four dissenting justices would have upheld the Corps's interpretation that extended coverage to "all traditionally navigable waters; tributaries of these waters; and wetlands adjacent to traditionally navigable waters or their tributaries." *Id*. at 792 (Stevens, J., dissenting). Justice Kennedy drew the line somewhere between, extending coverage to waters or wetlands that "possess a 'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id*. at 759 (Kennedy, J. concurring in judgment) (quoting *Solid Waste Agency of N. Cook Cty.*, 531 U.S. at 167). In 2007, the EPA and the Corps jointly issued a new guidance adopting a "significant nexus" standard. *See Precon Dev. Corp. v. U.S. Army Corps of Engineers*, 633 F.3d 278, 282-83 (4th Cir. 2011).

accordingly, they "are subject to the jurisdiction of Section 404 of the CWA." May 23, 2008 Memorandum for the Record of Col. Thomas H. Magness, Dist. Dir., U.S. Army, at 5-6 (Compl. ex. 2). On December 3, 2008, the EPA issued a letter setting out its own "determination to affirm the [Corps's] designation of the two reaches as TNWs." Dec. 3, 2008 Letter to John Paul Woodley, Jr., Asst. Sec'y of the Army (Civil Works), from Benjamin H. Grumbles, Asst. Adm'r, EPA, at 2 (Compl. ex. 1).

NAHB filed this action in March 2009, challenging the TNW Determination insofar as it "has the effect of expanding the agencies' jurisdiction over dry desert washes, arroyos and other water features within the Santa Cruz River watershed under the Clean Water Act." Compl. ¶ 2. The complaint sets out two claims, asserted both on NAHB's own behalf and in its representational capacity on behalf of individual members. Count 1 challenges the TNW Determination as violative of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 et seq., because the Agencies provided no notice or opportunity to be heard before issuing the TNW Determination. Count 2 challenges the substance of the TNW Determination as unlawful. The complaint seeks declaratory and injunctive relief, requesting that the district court (1) declare the TNW Determination to be invalid and (2) "set aside the TNW Determination[] . . . and enjoin the Corps and EPA from relying on the TNW Determinations in any future jurisdictional determinations in the Santa Cruz River watershed." Compl. 19-20.

On August 18, 2010, the district court granted the Agencies' motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) on the ground the CWA precludes pre-enforcement judicial review of a TNW Determination. *See Nat'l Ass'n of Home Builders v. U.S. EPA*, 731 F. Supp. 2d 50 (D.D.C. 2010). In light of its disposition, the court declined to reach the Agencies' alternative grounds for dismissal, including NAHB's

lack of Article III standing. NAHB filed a timely notice of appeal.

## II.

"Because Article III limits the constitutional role of the federal judiciary to resolving cases and controversies, a showing of standing 'is an essential and unchanging' predicate to any exercise of our jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted)). "The 'irreducible constitutional minimum of standing contains three elements': (1) injury-in-fact, (2) causation, and (3) redressability." *Ass'n of Flight Attendants v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (quoting *Lujan*, 504 U.S. at 560-61 (quotation marks omitted)). "Thus, to establish standing, a litigant must demonstrate a 'personal injury fairly traceable to the [opposing party's] allegedly unlawful conduct and likely to be redressed by the requested relief.' " *Id*. (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) (alteration in *Allen*)). We conclude that NAHB has not demonstrated an injury in fact traceable to the TNW Determination to establish standing— either in its own right or on behalf of its members.

### *A. Organizational Standing*

To establish organizational standing, NAHB must "allege[] such a 'personal stake' in the outcome of the controversy as to warrant the invocation of federal-court jurisdiction"; that is, it must demonstrate that it has " 'suffered injury in fact,' including '[s]uch concrete and demonstrable injury to the organization's activities—with [a] consequent drain on the organization's resources—constitut[ing] . . . more than simply a setback to the organization's abstract social interests.' " *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995) (quoting *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982)). This NAHB has not done.

NAHB alleges it has "spent considerable staff time and monetary resources in the quest to clarify CWA jurisdiction," such as submitting comments to the EPA and to the Corps, testifying before the United States Senate and participating in "numerous court cases," including this one. Compl. ¶ 21; Decl. of Thomas J. Ward, NAHB Vice President of Litig. & Legal Servs. ¶¶ 8, 17-19 (filed Feb. 4, 2010) (Ward Decl.). But these claims do not suffice. First, this litigation's expenses do not qualify as an injury in fact. *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) ("An organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit."). As for the other expenditures claimed, NAHB has not shown they were for "operational costs beyond those normally expended" to carry out its advocacy mission. *Nat'l Taxpayers Union*, 68 F.3d at 1434 (association's "self-serving observation that it has expended resources to educate its members and others regarding [challenged statutory provision] does not present an injury in fact"); *id.* ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization." (quotation marks omitted)); *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1162 (D.C. Cir. 2005) ("Here, the only 'service' impaired is pure issue-advocacy—the very type of activity distinguished by *Havens*." (citing *Havens*, 455 U.S. at 379)). Because NAHB has not asserted the alleged violation "perceptibly impaired" a non-abstract interest, we conclude it has not shown organizational standing sufficient to satisfy Article III. *See Havens*, 455 U.S. at 379.

### *B. Representational Standing*

NAHB also claims representational standing on behalf of its members. To establish representational standing, an association must demonstrate that " '(a) its members would otherwise have

standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Ass'n of Flight Attendants*, 564 F.3d at 464 (quoting *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (quotation marks omitted)). To obtain injunctive relief in particular, as NAHB seeks to do, it must show under the first prong of the test that at least one of its members "is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical"; it "must be fairly traceable to the challenged action of the defendant"—namely the TNW Determination—and "it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). While the burden of production to establish standing is more relaxed at the pleading stage than at summary judgment, a plaintiff must nonetheless allege " 'general factual allegations of injury resulting from the defendant's conduct' " (notwithstanding "the court 'presum[es] that general allegations embrace the specific facts that are necessary to support the claim' "). *Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002) (quoting *Lujan*, 504 U.S. at 561 (alteration in *Sierra Club*)). NAHB has not carried this burden because it has neither sufficiently alleged nor persuasively demonstrated any threat of injury in fact to any of its members that is "fairly traceable to" the TNW Determination.

1.

The complaint alleges that "[m]any of [NAHB's] members have or will attempt to obtain permits under Section 404 that authorize discharges of fill materials into waters within the federal CWA jurisdiction in connection with their projects" and

"have an interest in the manner in which such regulation takes place, including the types of watercourses that are subject to the agencies' regulatory jurisdiction." Compl. ¶ 30. NAHB does not explain, however, how the TNW Determination adversely affects either the "manner" of regulation or, with any specificity, the "types of watercourses" subject to regulation. NAHB does not here contest "whether the Santa Cruz River itself may be subject to Clean Water Act jurisdiction—an issue that is not raised in this action." Compl. ¶ 2. Yet this is the only issue the TNW Determination in fact resolved. *See* Compl. exs. 1, 2. It did not determine whether any particular "watercourse" other than the two reaches of the Santa Cruz River itself ("dry desert washes, arroyos and other water features," Compl. ¶ 2) is jurisdictional and therefore subject to the CWA's permit requirements. The Agencies decide through an individual site-specific "jurisdictional determination" whether a particular watercourse in the Santa Cruz River watershed is within their CWA jurisdiction, using the jointly developed "*Rapanos Guidance*" document[8] and based on the particular watercourse's "nexus" to waters the Agencies have determined to be TNW (in this case the Santa Cruz's two reaches). *See Precon Dev. Corp. v. U.S. Army Corps of Engineers*, 633 F.3d 278, 282-83 (4th Cir. 2011); 33 C.F.R. § 331.2 ("*Approved jurisdictional determination* means a Corps document stating the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United

---

[8]EPA and Army Corps of Engineers Guidance Regarding Clean Water Act Jurisdiction after *Rapanos v. United States* & *Carabell v. United States*, http://www.usace.army.mil/CECW/Documents/cecwo/reg/cwa_guide/cwa_juris_2dec08.pdf (dated December 2, 2008) (visited November 30, 2011); *see also* EPA and Army Corps of Engineers Guidance Regarding Identification of Waters Protected by the Clean Water Act, 76 Fed. Reg. 24,479 (May 2, 2011) (notice of availability of and request for comments on proposed new guidance).

States on a parcel."). Unless and until such a jurisdictional determination applies the TNW Determination to particular property (and its watercourses) and finds a sufficient nexus—or the Agencies use the TNW Determination in an enforcement action against a party discharging without a permit—the owner or developer of the property suffers no incremental injury in fact from the TNW Determination and any challenge to it is therefore premature. In the meanwhile, NAHB members face only the *possibility* of regulation, as they did before the TNW Determination: Any watercourse on their property may (or may not) turn out to be subject to CWA dredging permit requirements because of a nexus (or not) with the two Santa Cruz reaches. *See Lujan*, 504 U.S. at 561 ("[T]he plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." (citations and quotation marks omitted). Even before the TNW Determination, property owners and developers were aware the two Santa Cruz reaches could be so designated and other watercourses could, in turn, be considered CWA "navigable waters" because of their nexus to the Santa Cruz reaches. It was in part because of landowners' inquiries about their properties' jurisdictional status that the Corps undertook to perform the TNW Determination. *See* Mem. from Chip Smith, Asst. for Env't, Tribal & Regulatory Affairs, Office of the Asst. Sec'y of the Army (Civil Works), at 1 (June 13, 2008) (Smith Mem.). In the TNW Determination, the Agencies announced the jurisdictional status of the two Santa Cruz reaches—but without a jurisdictional determination (or enforcement action) based thereon, an individual property remains unaffected by the TNW Determination, which does not purport to apply to any watercourse thereon.

Citing no authority, NAHB argues that the TNW Determination "foreclos[es] the issue of the nearest TNW for site-specific [jurisdictional determinations] within the watershed." Appellants' Br. 59. We see no reason, however,

that an individual landowner or developer may not contest the TNW Determination in a challenge to a site-specific jurisdictional designation under the judicial review provisions of the CWA and implementing regulations. *See* 33 U.S.C. § 1319(b) and 33 C.F.R. § 326.5 (providing for judicial actions by Agencies to enforce compliance or cease-and-desist order or to obtain penalties); 33 U.S.C. § 1319(g) and 33 C.F.R. § 326.6 (providing for judicial review of penalties); *see, e.g.*, *Rapanos v. United States*, *supra* (reviewing Corps jurisdictional determinations in proceeding arising from both enforcement actions against developers and appeal of property owner's permit denial). Nor are we swayed by NAHB's assertion that its members *now* face "the choice of applying for a permit for activities that are outside the scope of the agencies' authority under the CWA or face significant civil or criminal enforcement penalties for failing to do so." Appellants' Br. 59. These are the same statutory and regulatory alternatives NAHB members faced before the TNW Determination. *See* 33 U.S.C. § 1319; 33 C.F.R. § 326.1-326.6. Without an additional allegation that the TNW substantially increased the risk of regulation or enforcement relating to particular property, we have no basis to conclude the TNW caused a "concrete and particularized" and "actual or imminent" threat to any landowner, let alone any particular NAHB member. *Lujan*, 504 U.S. at 561.

2.

NAHB also cites supporting declarations to establish its members' standing. One declarant recites he is "personally aware of NAHB members that recently applied for and received authorization to discharge stormwater under CWA Section 402 in connection with construction activities on lands within the Santa Cruz River watershed and where the receiving water was identified as the Santa Cruz River." Ward Decl. ¶ 9. But the declarant fails to explain whether the TNW Determination motivated the landowner to seek an application for a permit or

how the relief NAHB seeks—declaratory and injunctive relief—would remedy the *past* injuries the members may have already incurred in applying for the permits. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer *future* injury"; allegation of past injury "does nothing to establish a real and immediate threat " justifying injunctive relief) (emphasis added). Another declarant claims "personal knowledge of at least one [member] that owns land within the Santa Cruz River watershed and is applying for a Clean Water Act permit in connection with development activities on its land"; she does not explain, however, why the member's decision to apply is directly traceable to the TNW Determination, which applies only to the two Santa Cruz reaches themselves and not to any other watercourse within the river's watershed, including any watercourse that may be on the unidentified land belonging to the unidentified member. Decl. of Jessica D. Whyde, Southern Arizona Home Builders Association President ¶ 11. The declaration says nothing about the property, the watercourse affected by the landowner's project or the greater likelihood of regulation, if any, after than before the TNW Determination. The declarant further avers generally that "many . . . members are homebuilders and real estate developers" who "regularly" undertake construction projects which "cannot be conducted without impacting desert washes and other ephemeral drainage features . . . found on many parcels of land within the Santa Cruz River watershed in Pima County"; other members "own land within th[e] area, and thus will be impacted by the agencies' declaration that the two segments of the Santa Cruz River are traditional navigable waters." *Id*. ¶¶ 5, 10. The declarant does not assert, however, that any member plans in fact to discharge contaminants into a likely jurisdictional watercourse anytime soon. Thus, the declarations "fall short of establishing certainly impending dangers for any particular member of the petitioners'

associations." *Am. Chem. Council v. Dep't of Transp.*, 468 F.3d 810, 819 (D.C. Cir. 2006); *see id.* at 819-20 ("[i]t is not enough to allege that petitioners' associations comprise the majority" of affected individuals; without submissions of affidavits from individual members, "[w]e decline to assume missing links"); *see also Sierra Club*, 292 F.3d at 901-02 (counsel's allegation of injuries not within personal knowledge "are not evidence" and "serve[] only to illustrate why we require more than representations of counsel in order to establish a complainant's standing"); *id.* at 902 (maps of affected area showing location of members and list of mailing addresses insufficient to demonstrate injury to any particular member).

### *C. Procedural Standing*

Finally, NAHB claims that even if it has not established a substantive injury to support its standing, it nonetheless has "procedural" standing to challenge the Agencies' failure to provide notice and an opportunity to submit comments pursuant to the APA. *See* 5 U.S.C. § 553(b), (c). This argument fails as well and for the same reason—no imminent injury in fact has been alleged.

In *Summers v. Earth Island Institute*, the Supreme Court made clear that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." 555 U.S. at 496. Yet this is precisely what NAHB claims here—a right in a void. That the Congress has accorded a procedural right "can loosen the strictures of the redressability prong of our standing inquiry"—so that standing may exist even if the right to comment likely would not have succeeded in persuading the agency to change its mind. *Id.* at 497. "Unlike redressability, however, the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Id.* Without an imminent threat of injury traceable to the challenged action, that floor stands as a ceiling. *See United*

*Transp. Union v. ICC*, 891 F.2d 908, 918 (D.C. Cir. 1989) ("[B]efore we find standing in procedural injury cases, we must ensure that there is some connection between the alleged procedural injury and a substantive injury that would otherwise confer Article III standing. Without such a nexus, the procedural injury doctrine could swallow Article III standing requirements."). And, as we have already explained, NAHB has identified no such injury. *See Summers v. Earth Island Inst.*, 555 U.S. at 495-96 (affidavit failing to identify particular project affecting member's enjoyment of forest lands did not sufficiently allege concrete injury under *Defenders of Wildlife v. Lujan*).

For the foregoing reasons, we affirm the district court's dismissal of NAHB's complaint for lack of jurisdiction on the alternative ground that it lacks Article III standing to challenge the Agencies' TNW Determination.

*So ordered.*